**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **ED CV 26-1130-JFW(MAR)**                    Date:  March 20, 2026

Title:       Tung Huy Nguyen-*v*- D. Marin, et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
                    None                                                          None

**PROCEEDINGS (IN CHAMBERS):**          **ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY ORDER PROHIBITING THIRD COUNTRY REMOVAL AND PRESERVING JURISDICTION [filed 3/11/2026]**

On March 12, 2026, Petitioner Tung Huy Nguyen ("Petitioner") filed a Motion for Temporary Order Prohibiting Third Country Removal and Preserving Jurisdiction ("Motion").  On March 16, 2026, Respondents filed their Opposition.[1]  Petitioner did not file a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for March 23, 2026 is hereby vacated and the matter taken off calendar. After considering the moving and opposing papers, and the arguments therein, the Court rules as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a native and citizen of Vietnam.  In November 1984, Petitioner and his family lawfully entered the United States as refugees, and, on March 17, 1986, Petitioner was admitted into the United States in California as a Lawful Permanent Resident.  Petitioner, however, subsequently sustained criminal convictions in 1992, 1993, and 2011.  On April 28, 2021, an Immigration Judge issued a final order of removal, based on Petitioner's criminal convictions, and Petitioner was ordered removed to Vietnam.

---

[1]  In his Motion, Petitioner seeks a temporary restraining order ("TRO") and an Order to Show Cause why an order for a preliminary injunction should not be granted.  Because Respondents had notice and an opportunity to respond, Petitioner briefed the issues thoroughly, and the standard for a TRO and a preliminary injunction are the same, the Court will treat Petitioner's Motion as a motion for preliminary injunction.

Initials of Deputy Clerk __sr_

On June 30, 2021, based on Vietnam's longstanding policy of not accepting pre-1995 immigrants for repatriation, ICE Headquarters determined that there was no significant likelihood that Petitioner would be removed in the reasonably foreseeable future and thus instructed that Petitioner be released from custody.  Accordingly, on July 1, 2021, Petitioner was released from ICE custody under an Order of Supervision ("OSUP"). According to Petitioner, since that date, he has complied with the conditions of his release, including required check-ins.

However, at Petitioner's scheduled check-in on February 3rd or 5th, 2026, Petitioner was told hat his OSUP was revoked and he was taken into ICE custody.  Shortly thereafter, on February 5, 2026, ICE issued a Notice of Revocation of the Order of Supervision, which provided that his case was under current review by the Government of Vietnam for the issuance of a travel document. According to Respondents, that same day, the Notice was served on Petitioner, and an informal interview with Petitioner was conducted, at which time he was given an opportunity to respond to the reasons for the revocation.

According to Respondents, on or about March 10, 2026, ICE sent a request for travel documents from the Vietnamese Government. According to the Respondents, they "expect" that travel documents will be received from the Embassy of Vietnam, but they fail to provide any timeline or any facts or statistics justifying their "expectation".

Petitioner is currently detained at the Adelanto Detention Center in California. On March 11, 2026, after being in ICE custody for approximately a month, Petitioner filed a Petition for Writ of Habeas Corpus, which alleges that ICE's revocation of his OSUP and his re-detention are unlawful and violate his due process rights because there is no significant likelihood that he will be removed to Vietnam or a third country in the reasonable foreseeable future.  That same day, Petitioner filed his Motion seeking a TRO and preliminary injunction, ordering Petitioner's immediate release and enjoining Respondents from removing or attempting to remove Petitioner to a third country without affording him his statutory and constitutional rights.

## II.     LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20).  Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another."

Initials of Deputy Clerk __sr_

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

## III.      DISCUSSION

### A.      Petitioner Has Demonstrated Serious Questions Going to the Merits

####      1.      Legal Standard

Under the Immigration and Nationality Act ("INA"), when an alien is ordered removed, the government ordinarily must secure the alien's removal from the United States within a period of ninety days, known as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  Certain aliens ordered removed may be detained beyond the ninety-day removal period, including those who are removable for certain criminal offenses, those determined to be a risk to the community, or those unlikely to comply with the order of removal.  8 U.S.C. § 1231(a)(6).  However, in *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation."  In other words, "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  *Id.* at 689.  The Supreme Court reasoned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," because "[t]he Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law'" and the Supreme Court made clear that aliens, whether their presence is lawful, unlawful, temporary, or permanent, enjoy due process constitutional protections.  *Id*. at 690.  Indeed, "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Id.*

If an alien cannot be removed to their country of origin, federal regulations require ICE to release them from detention on an OSUP if there is no significant likelihood that the alien will be removed in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute").  In this case, although Petitioner was ordered removed, Petitioner was released on an OSUP on July 1, 2021.

Once ICE releases an alien on an OSUP, "ICE's ability to re-detain that noncitizen is constrained by its own regulations."  *See Roble v. Bondi*, 2025 WL 2443453 (D. Minn. Aug. 25, 2025) (finding that ICE had illegally re-detained the petitioner and ordering his immediate release where the petitioner had been ordered removed to Somalia but his deferral of removal under CAT precluded the government from removing him to Somalia and the government failed to demonstrate that there was a significant likelihood that he may be removed in the reasonably foreseeable future).  Specifically, ICE may re-detain an alien released on an OSUP "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2); *see also Nguyen v. Hyde*, 788 F.Supp. 3d 144, 149 (D. Mass. 2025) (concluding that this "case is not about ICE's

Initials of Deputy Clerk  _sr_

authority to detain in the first place upon issuance of a final order of removal . . . This case is about ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP.  The DHS regulation 8 C.F.R. § 241.13(i), applies to noncitizens in [this] situation") (emphasis in the original).

In addition, if ICE elects to revoke an alien's release under 8 C.F.R. § 241.13(i)(2), the alien must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after the alien's return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  At that interview, the alien "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future."  *Id.*

Importantly, failing to comply with federal immigration law when removing or detaining a noncitizen violates the noncitizen's due process rights.  *See, e.g., Bui v. Noem*, 2025 WL 4061564, at *2 (C.D. Cal. Dec. 30, 2025).

      2.      <u>Petitioner has demonstrated serious questions going to the merits.</u>

The Court concludes that Petitioner has demonstrated, at the very least, serious questions on the merits.

Respondents contend that, because Petitioner has been detained less than six months, Petitioner has the burden to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future.  However, when a Petitioner has been *re-detained* pursuant to a revocation of an OSUP, the government bears the burden to demonstrate that, due to changed circumstances, there is a significant likelihood that the non-citizen will be removed in the reasonably foreseeable future.  *See Bui v. Noem*, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025) *(*"Under 8 C.F.R. 2413.13(i)(2), the government bears the burden to show that on account of changed circumstances, there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.*"); Pham v. Marin*, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026) (When a non-citizen has been *re-detained* pursuant to the revocation of an OSUP, "the *government* bears the burden of showing a significant likelihood that the noncitizen may be removed.") (cleaned up).

In this case, Respondents have failed to meet their burden. Respondents contend that it is likely that Petitioner will be removed, based on: (1) a conclusory statement that pre-1995 Vietamese immigrants are now "routinely" removed to Vietnam, relying on a handful of petitions that have been mooted by the government's removal of the non-citizen to Vietnam; and (2) a declaration by a deportation officer that conclusorily states that "Vietnam is now issuing travel documents for all cases regardless of the dates of entry into the United States" and that "[i]t is expected that the travel documents will be received [for Petitioner] from the Embassy of Vietnam". In *Bui v. Noem*, 2025 WL 4061564, *3–4 (C.D. Cal. 2025), Judge Klausner rejected the same arguments that Respondents make here, and the Court adopts Judge Klausner's well reasoned opinion.

Accordingly, the Court concludes, at the very least, that Petitioner has demonstrated serious

      Initials of Deputy Clerk __sr__

questions going to the merits as to whether his due process rights were violated when they revoked his OSUP.

### B.     Petitioner Has Demonstrated the Likelihood of Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (citation omitted). In addition, the "Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (*quoting Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). In this case, Petitioner has been unlawfully detained in violation of his due process rights. As a result, Petitioner has suffered irreparable harm as a result of his detention and will continue to suffer the harm absent relief.

Accordingly, the Court concludes that Petitioner has demonstrated that the likelihood of irreparable harm factor weighs in his favor.

### C.     The Balance of Equities and the Public Interest Factors Weigh in Favor of Petitioner

The last two *Winter* factors – the balance of the equities and public interest analyses – merge when the government is the opposing party. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (*citing Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, . . . the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted).

In this case, Petitioner has demonstrated, at the very least, that there are serious questions going to the merits as to whether he is unlawfully detained in violation of his due process rights and that he is suffering the harms of immigration detention. In the absence of any countervailing interests identified by Respondents, the Court concludes that Petitioner's concrete harm outweighs any interest that Respondents may have.

Accordingly, the Court concludes that Petitioner has demonstrated that balance of equities and the public interest factors tip sharply in his favor.

### D.     Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (*quoting Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no

realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. (citation omitted). As a result, the mandatory language of Rule 65(c) does not "absolve[ ] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). In this case, Respondents have not demonstrated any likelihood of harm if the Court grants the requested relief, and have not requested a bond if that relief is granted.

Accordingly, the Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

## IV.    CONCLUSION

For all of the foregoing reasons, Petitioner's Motion for a TRO and preliminary injunction is **GRANTED**.[2] Respondents are **ORDERED** to immediately release Petitioner from custody and restore him to the status quo prior to his detention by reinstating his prior OSUP, and refrain from re-detaining Petitioner unless and until he is provided proper due process under the Constitution and immigration laws and regulations necessary for the revocation of an OSUP.

IT IS SO ORDERED.

---

[2] Petitioner also argues that removal to a third country without prior notice and an opportunity to be heard would violate his due process rights. However, Petitioner has not shown that the government intends to remove him to a third country. At this time, Respondents only appear to be seeking travel documents from the Vietnamese Embassy. Docket No. 9-1 ¶ 16. "Therefore, Petitioner's fear of being removed to a third country without proper notice or opportunity to respond is only speculative and not ripe for adjudication." *Morales Sanchez v. Bondi*, 2025 WL 3190816, at *4 (C.D. Cal. Oct. 3, 2025); *see also Farsi v. Noem*, 2025 WL 4041921, at *5–6 (C.D. Cal. Dec. 10, 2025) (denying TRO with respect to third country removal because Petitioner failed to assert removal to third country was imminent); *Ovikian v. Noem*, 2026 WL 242700, at *7 (C.D. Cal. Jan. 23, 2026) (same).

Initials of Deputy Clerk _sr_